*Northern District*

No. 7170

**ABRAHAM KARFF**

v.

**COMMERCIAL INSURANCE COMPANY
OF NEWARK, NEW JERSEY**

Argued: Dec. 17, 1969   Decided: Feb. 4, 1970.

*Present:* Brooks, P.J., Connolly, Parker, JJ.

Case tried to *Yesley, J.*, in the Newton District Court No. 20414.

*Connolly, J.   This is an action of contract* to recover the sum of $896.92 for certain hospital and medical charges in two counts each based on a separate policy insurance issued by the defendant. Under Count 1 based upon policy number GAL 4983 the plaintiff claims to be entitled to recover $565.92 and under Count 2

based upon policy number GAE 1537 claims to be entitled to recover $331.70.

The action was submitted to the court on the following

*Statement of Agreed Facts*

1. This is an action of contract wherein the plaintiff seeks to recover the sum of $896.92 for certain hospital and medical charges. The plaintiff sustained a "sickness" as defined in the two policies hereinafter referred to and was confined to the Malden Hospital where he received medical care and treatment. The defendant paid to the plaintiff a portion of the amount claimed by the plaintiff, but the plaintiff contends he is also entitled to receive the amount sued for. The plaintiff, who is an Attorney at Law resides in Newton, Massachusetts.

*In Re: Policy No. GAE 1537*

2. On September 15, 1953 the defendant in consideration of the premiums paid by the plaintiff issued to the plaintiff a policy of insurance to provide indemnity for hospital, surgical and medical expenses caused by accidental bodily injury or by sickness to the extent therein provided and which was renewable at the option of the company policy.

3. Part two of the policy so issued was as follows:

> "The Company will pay the *expense actually incurred* for X-ray examinations, anaesthesia and anaesthetist services, la-

boratory services, radium treatment, operating room, blood and blood plasma, basal metabolism, electro-cardiogram, oxygen inhalator, use of physical therapy equipment, dressings, drugs, medicines, or any other miscellaneous hospital cost during the period of such hospital confinement and for ambulance service to and from the hospital, not to exceed the sum specified for such miscellaneous expense in the Schedule of Coverages, for all such services rendered to each person covered, as the result of any one injury or sickness. Physician's, surgeon's, dentist's or nurse's fees are not included under this miscellaneous expense." [Emphasis added].

4. The amount due the plaintiff under Plan B of the policy and the amount therein set forth for miscellaneous expenses was to be "up to five hundred dollars ($500.00)."

5. As the result of sickness as defined in the policy and while the policy was in full force and effect, the plaintiff was confined in the Malden Hospital, a lawfully constituted hospital, from June 28, 1968 to July 9, 1968, for which a charge in the sum of $331.00 was made for miscellaneous expenses as defined in said insurance policy.

6. That the defendant has neglected and refused and still neglects and refuses to pay to the plaintiff the said sum of $331.00

7. *Prior to August 20, 1968 the hospital re-*

*ceived directly from the Department of Health, Education and Welfare under the Social Security Program* (42 U.S.C. Section 1395 C et seq.) *the sum of $331.00 by virtue of a claim made directly by the hospital to the said department.* (Emphasis added).

8.  The plaintiff has fully complied with all the terms of the policy regarding payment of premiums, notice and proof of loss.

9.  The Medicare provisions of the Social Security Act provide for certain benefit payments which became effective in the year 1966, but the plaintiff who came under said Medicare program continued to pay the same premiums on said policy as he paid prior to 1966 without any deductions whatsoever.

IN RE: POLICY NO. GAL 4983

10.  On September 30, 1963 the defendant in consideration of the premiums paid by the plaintiff issued to the plaintiff a policy of insurance to provide indemnity for certain medical expenses incurred by the insured resulting from accidental bodily injury or sickness as set forth in the policy.

11.  Part two of the policy provides as follows:

> The Company agrees that if a covered person shall incur, within any period of ninety days, covered medical expenses in excess of the deductible, the Company will pay the insured an amount equal to *80% of such expenses incurred* within two

years from the date such Covered Medical Expense first began, provided the total amount payable under this part for any one continuous period of treatment shall not exceed the medical expense indemnity specified in the schedule. (Emphasis added).

Covered Medical Expenses are those prescribed by the attending physician and are incurred for:

(a) Medical or surgical treatment by a legally qualified physician;

(b) Hospital room, board, general nursing care, medical service, and materials;

(c) Full-time private duty nursing service by a registered graduate nurse;

(d) Physical therapy by a physical therapist;

(e) X-ray examination and treatment;

(f) Other treatments, services and materials as follows:

    1. Dental care for the treatment of a fractured jaw or accidental injury to natural teeth;

    2. Artificial limbs or eyes;

    3. Oxygen and the rental of equipment for the administration thereof;

    4. The rental of a wheel chair, a hospital-type bed, an iron lung, or the mechanical equipment required for

the treatment of respiratory paralysis;

5. Casts, splints, trusses, braces or crutches;
6. The use of radium and radio-active isotopes;
7. Blood; blood plasma;
8. Drugs and medicines requiring prescription for use outside the hospital;
9. Laboratory tests;
10. Anaesthetics and the administration thereof; and
11. Local transportation to or from a hospital by professional ambulance.

Covered Medical Expenses shall not exceed the customary charges made in the locality where the services are performed or materials furnished and shall be considered to be incurred on the date the service is performed or materials furnished.''

12. That as a result of sickness as defined in the policy and while the said policy was in full force and effect, the plaintiff was confined to the Malden Hospital, a hospital as defined in the policy, from June 28, 1968 to July 9, 1968 for which a charge for Covered Medical Expenses was made.

13. *That the hospital has received from the Department of Health, Education and Welfare under the Social Security Program (42 U.S.C.*

Section 1395C et seq.) *the sum of $707.40* (Emphasis added).

14. That the defendant has deducted the amount of $707.40 from the amount of the hospital bill and doctor's bill.

15. The defendant has refused and neglected and still refuses and neglects to pay to the plaintiff 80% of $707.40 or $565.92, the amount now being claimed in this count.

16. The Medicare privileges of the Social Security Act providing for certain hospital payments became effective on July 1, 1966, but the plaintiff who came under said Medicare program continued to pay the same premium as he paid prior to 1966 without any deductions thereon.

17. The said two policies of insurance are made a part hereof and may be marked Exhibits 1 (#GAE 1537) and 2 (#GAL 4983).

18. If the Social Security Program was not in existence at the time of the plaintiff's hospitalization, the defendant would be obligated to pay the amount claimed by the plaintiff in this action.

19. The plaintiff sent to the defendant's representative a letter dated October 31, 1966, inquiring whether because of the Medicare program his present coverage needs re-evaluation and requesting that someone "knowledgeable" see him in connection therewith.

20. The Malden Hospital has a contractual arrangement with the Massachusetts Blue

Cross, who have been designated by the Social Security Administration as intermediaries of the Medicare Program and, as such, billings from the Malden Hospital on Medicare patients are sent directly to the Massachusetts Blue Cross for covered payments.

21. The contract between the Malden Hospital and the Blue Cross for and in behalf of the Department of Health, Education and Welfare is attached hereto and made a part hereof.

> (s) DONALD STAHL
> Attorney for Plaintiff
> (s) NYMAN KOLODNY
> Attorney for defendant

At the time of the hearing of the Statement of Agreed Facts and before arguments, the plaintiff submitted requests for rulings to the Court. The court failed to rule upon these requests, stating ''No action taken on these requests since the agreed statement contains all the material facts. *Simmons* v. *Cambridge Savings Bank,* 346 Mass. 327, 329.''

The requests for Rulings had no standing, *Simmons* v. *Cambridge Savings Bank,* 346 Mass. 327 and there is no need to include or discuss them in this Opinion.

The court made the following findings:

### Court's Findings

This case was heard on a Statement of Agreed Facts which are summarized below.

The plaintiff was confined by reason of sickness to the Malden Hospital (the Hospital) from June 28 to July 9 of 1968. At the time he held two separate insurance policies issued by the defendant, one numbered GAE 1537 effective on September 15, 1953 and the other numbered GAL 4983 effective on September 30, 1963. Under GAE 1537 (policy #1), in part 2 thereof, the defendant agreed to "pay the expense actually incurred (for certain designated hospital services) or any other miscellaneous hospital cost . . . . not to exceed ($500.00)''. A "charge" of $311.00 was made by the hospital for miscellaneous expenses within the policy coverage. The defendant refuses to pay this amount to the plaintiff.

Under GAL 4983 (policy #2), the defendant agreed "that if (the plaintiff) shall incur . . . . Covered Medical Expenses in excess of the deductible, (it) will pay (the plaintiff) an amount equal to 80% of such EXPENSES . . . . . . ''Covered Medical Expenses'' included specified items of medical treatment and hospital care, resulting from accident or sickness. A charge was made by the hospital for such covered medical expenses, which the defendant has paid to the extent called for in the policy except for a deduction of $707.40 from the amount of the bills. The plaintiff's claim under this policy is for 80% of $707.40, to wit, $565.92. The defendant has refused to pay said respective amounts of $331.00 and $565.92 on the

ground that payment of the $331.00 and of said amount of $707.40 (of which $565.92 is 80%) has been made to the hospital by the United States Department of Health, Education and Welfare, the department) pursuant to the Medicare program under the Social Security Act, which program became effective in 1966. The plaintiff came under the coverage of said Medicare program in 1966 and was so covered during his hospital confinement. He had continued, also, to carry the said policies, and to pay the premiums thereon, without any changes in coverages or adjustment of premiums.

The hospital had entered into a contract with the department in 1966, made a part of the statement and marked Exhibit 3, whereby the hospital agreed..... ''not to change (with an exception not material to this action) any individual or any other person for items and services for which such individual is entitled to have payment made under the Medicare provisions of the Social Security Act — sec. 1866 (a) (1) (A).'' The charges in question were within the prohibited charges. Pursuant to this contract, and by arrangement made by the department with Massachusetts Blue Cross, billings from (the hospital) on covered services to Medicare patients were sent directly to the Massachusetts Blue Cross for payment.

The issue, put simply, is whether the expenses covered by the two insurance policies were ''incurred'' in the light of the foregoing

facts. The defendant contends that they were not because of the agreement on the part of the hospital not to charge the plaintiff for the services in question but to look for payment from the department or the agency designated by it (Massachusetts Blue Cross).

But for the Medicare program, it is agreed that the defendant would be obligated to pay the amounts sued upon herein.

The effect of the Medicare program and the contract by the hospital is to impose an obligation on the hospital not to charge the patient but to look to the department for payment of charges covered by Medicare. Can it be said that one, to whom a service is rendered under an arrangement that someone else is to be charged and to pay for that service, incurs an expense for such service? If X calls a hospital and requests that it bill X and not Y for a service to be rendered to Y, and the hospital so agrees, can it be said that Y incurred the expense? I think not.

"Dictionary definitions of 'incur' include 'to become liable or subject to' ..... and 'to become through one's inaction liable or subject to' " (*Commonwealth* v. *Benoit*, 346 Mass. 294, 298). I rule that the plaintiff did not incur the charges in question, and I further rule that unless he incurred them, the defendant was not responsible therefor under either of the policies. I make no distinction in the policies by reason of the difference in language between

"if the plaintiff shall incur ... expenses" (policy #2) and "the expense actually incurred" (policy #1).

Whether or not there is any right in the plaintiff to an adjustment in the premiums paid is not litigated in this action.

I find for the defendant.

(s) JULIAN L. YESLEY
Justice

It is a cardinal principle of insurance law that a policy of insurance is to be construed liberally in favor of the insured or his beneficiary and strictly as against the insurer *MacArthur* v. *Massachusetts Hospital Service, Inc.,* 343 Mass. 670. *M. Rezendes* v. *Prudential Insurance Company of America,* 285 Mass. 505. However, where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense.

If the intent of the parties is clear, the courts have no authority to change the contract in any particular. The court has no power to put into the agreement between the insurer and the insured a condition or stipulation not contemplated either by the law or by the contract between the parties. *Simmons* v. *Cambridge Savings Bank,* 346 Mass. 327.

In this case, the insurer agreed to pay in one policy, the miscellaneous medical "expen-

ses actually incurred" by the insured and, in the other policy, "covered medical expenses incurred" by the insured.

"Incurred" as used in a health and accident policy indemnifying the insured against hospital and medical expenses actually incurred contemplates those expenses for which the insured has become legally liable. *Insurance Law and Practice,* Appleman Vol. 1A, Chap. 40, Sec. 705. *Reserve Life Insurance Company* v. *Coke,* 254 Miss. 936.

While we do not find any case in point in Massachusetts case law, there is authority in other states for the proposition that under a hospitalization policy, no expense is "incurred" within the meaning of the policy when a government agency such as Medicare assumes the cost of treatment. *Protective Industrial Insurance Company of Alabama* v. *Gray,* 40 Ala. App. 578.

In the case of *Travelers Insurance Company* v. *Varley,* a 1967 case reported in 421 S. W. 2d 478, the court said on page 481:

> "Whether plaintiff may recover under the "Miscellaneous Fee" section of Part EH depends upon the meaning of "actual expense to the employee." The insurer argues he had no actual "expense", but that Medicare bore it. "Expense" means "money spent; disbursing of money; cost, charge, money to pay for charges"; "cost" with the idea of loss, damage, or sacrifice";

"a drain on one's finances, as 'one's sickness is always an expense' "; "outlay, the burden of expenditure". 1 Webster's New Twentieth Century Dictionary (2d ed. 1964) 644; Webster's New International Unabridged Dictionary 896.

"(4) When qualified by the emphatic adjective, "actual" and when circumscribed by the restrictive words, "to the employee", it is unreasonable in our opinion to conclude the claimed benefits are recoverable under the Miscellaneous Fee Section. There was no actual expense to the employee."

A 1965 case in New York extends that principle holding that an insurer which issued policy that insured the policy holder and his family against expenses actually incurred, was not liable where policy holder's wife was operated upon for a cancerous condition but no bill was rendered due to another insurance contract as no expenses were actually incurred by policy holder or his family. *Carboni* v. *Standard Security Life Ins. Co. of N.Y.*, 258 N.Y.S. 2d 47.

We note that the key phrase in one of the policies involved is "expenses incurred" whereas in the other policy and in several of the cases cited, the key phrase is "expenses actually incurred". We do not feel, on the facts in this case, that the omission of the qualifying word "actually" from one policy requires a different decision on the count on that policy (count 1).

We think the plaintiff incurred no expenses, within the meaning of the provisions of the policies which are the basis for this action, for those amounts for hospitalization and miscellaneous expenses which were paid by Medicare.

The finding for the defendant by the trial judge was proper.

There being no prejudicial error, *the Report is dismissed.*

DONALD STAHL
    for plaintiff.
MYER Z. KOLODNEY
    for defendant.